UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHERYL WARD-PLASTER,

Plaintiff,

v. Case No: 8:25-cv-02793-NHA

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________________/

**ORDER**

Plaintiff challenges the April 7, 2025 denial of her claim for supplemental security income. She argues that the Administrative Law Judge (ALJ) erred: (1) by finding that Plaintiff's headaches were a "severe" impairment but failing either to identify any corresponding functional limitations, or to explain why there were none; (2) by failing to consider the combined effects of Plaintiff's psychiatric impairments and physical impairments on her ability to perform work that required sustained interaction with others; and (3) by finding both that Plaintiff had mild limitations in interacting with others and that Plaintiff could perform a job that required sustained interaction with others, without reconciling these findings. Doc. 21.

Having reviewed the parties' briefing and the record below, I remand to give the ALJ the opportunity to explain whether he considered, and on what basis he omitted from Plaintiff's residual functional capacity (RFC), certain limitations associated with Plaintiff's headaches.

## I. Record

Plaintiff, who was born in 1975, has completed ninth grade and has previously worked as a cashier. R. 436, 440, 635. She suffers from two medical conditions relevant to her appeal: headaches and anxiety.

### a. Headaches

Following a car accident in January 2021, Plaintiff regularly complained of headaches. *See e.g.,* R. 816 ("severe, frequent" headaches in January 2021); R. 1429 (complaints of headaches in December 2021); R. 1220 (headaches daily since car accident). In 2022, Plaintiff complained that her headaches occurred nearly every day. R. 1829 (reporting "frequent or severe headaches and migraines" in July 2022); R. 1997 (headaches nine out of last ten days in September 2022); R. 1969 (headaches "every morning" in November 2022).

But at the end of 2022, Plaintiff's providers prescribed Topiramate (taken twice daily) and Ketorolac injections (as needed). R. 1957, 2002, 2192, 2201, 2980 (increased Topiramate dosage). These medications, along with drinking coffee in the morning, seemed to help intermittently. R. 1220 (discussing effectiveness of coffee); R. 1959 (reporting relief in December 2022);

R. 2206 (headaches again one week later). In 2023 and 2024, Plaintiff's headaches appeared to occur less frequently. *See* R. 2787 (In February 2023, Plaintiff reported she was not experiencing headaches); R. 3751 (In early August 2023, Plaintiff reported headaches a few times a week); R. 3747 (In late August 2023, Plaintiff reported that she had "a couple" headaches per month.); R. 4708 (In August 2024, Plaintiff reported frequent headaches).

Plaintiff reported to her medical providers that her headaches caused photophobia, meaning a sensitivity to light, and that the headaches also interfered with her hearing. R. 1220, 3751.

At the February 7, 2024 hearing before the ALJ, Plaintiff testified that she suffered from headaches "a couple of times a week." R. 443–44. The headaches ranged in severity from "just kind of annoying" to "excruciating." R. 444. Plaintiff's physician treated the worst headaches with shots. R. 444–45. At the November 4, 2024 hearing, Plaintiff testified that she had "lots of headaches" which caused light and sound sensitivity. R. 457, 464–65. However, Plaintiff testified that, while she woke up with a headache every morning, some headaches disappeared after a cup of coffee; others required her to visit the doctor for a shot. R. 465.

In sum, and relevant to this appeal, Plaintiff reported headaches causing three limitations: light sensitivity, sound sensitivity, and loss of hearing. R. 457, 464–65, 1220, 3751.

b. Anxiety

Plaintiff also reported that she suffered from anxiety, which increased when she is around people, and made her irritable. R. 2563. Plaintiff described being terminated by a former employer for having difficulty getting along with others. R. 702. In contrast, Plaintiff reported that she liked to "hang out" and have "conversations" and that she went to church and meetings. R. 701 (also stating that, while she has difficulty getting along with others when she "hear[s] things that she do[es not] like," she is able to keep her thoughts to herself). Indeed, the record reflects that Plaintiff sought therapy for her social anxiety and related irritability (R. 2563) and, by 2024, Plaintiff described her mental health as "very much improved" (R. 4608), and her therapist described her as having only "borderline symptoms" (R. 4608). *See also* R. 4611 ("minimal depression and anxiety").

The record generally shows that Plaintiff had little difficulty engaging with others. For example, Plaintiff's therapist listed Plaintiff's care for others, communication skills, patience, politeness, positive family relationships, and sense of humor as her "strengths." R. 1329. Medical providers often found Plaintiff to be calm and pleasant. *See, e.g.,* R. 2043, 2056, 2087, 2514. A consultative examiner reported that she was "cooperative" and "[s]he appears able to relate and act appropriately with others." R. 804–07. But Plaintiff sometimes exhibited irritability. R. 2062, 2470, 2531, 3297.

## II. Procedural Background

Plaintiff alleges that she became disabled on November 2, 2021. R. 635. Plaintiff applied for supplemental security income (SSI) on March 8, 2022, claiming disability due to numerous conditions, including her Chiari malformation[1] (which can cause headaches) and anxiety. R. 635, 664.

The Commissioner denied Plaintiff's SSI application, initially (R. 510) and on reconsideration (R. 524). Plaintiff then requested a hearing. R. 545. The ALJ held two hearings, one on February 27, 2024 and, at Plaintiff's request, another one on November 4, 2024. R. 427–50, 451–71, 769.

Following the hearings, the ALJ found that Plaintiff was not disabled and therefore not entitled to SSI. R. 18–30. Following the five-step sequential evaluation process for determining whether an individual is disabled (20 C.F.R. 416.920(a)), the ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since her application date, March 8, 2022. R. 20.

At Step Two, the ALJ found that Plaintiff did have severe[2] impairments, including headaches, but that she had no severe mental impairments (such as

---

[1] A Chiari malformation happens when brain tissue in the lower back of the skull goes into the spinal canal. Symptoms can include, headaches, neck pain, balance issues, dizziness, hearing and vision issues, weak muscles, and sleeping issues. Chiari Malformation, Cleveland Clinic, *available at* https://my.clevelandclinic.org/health/diseases/6008-chiari-malformation

[2] A severe impairment is one that significantly limits one's ability to perform "basic work activities" for at least 12 consecutive months. *See* 20 C.F.R.

anxiety). R. 20. Here, the ALJ noted that Plaintiff claimed that anxiety, post-traumatic stress disorder, and attention deficit disorder contributed to her inability to work. R. 21. The ALJ examined whether Plaintiff's mental limitations impacted any functional areas.[3] Relevant to this appeal, the ALJ found that Plaintiff only had a "mild limitation" in interacting with others. R. 21. While he noted that Plaintiff alleged deficits in her social functioning, he rejected her allegations because there "were scant references to social deficits on actual mental status examinations." R. 21. Because Plaintiff's limitations caused by her mental disorders were "mild," the ALJ found that Plaintiff's mental impairments were non-severe, meaning that they caused no more than a minimal limitation in her ability to perform basic mental work activities. R. 21.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22.

At Step Four, the ALJ made findings as to Plaintiff's residual functional capacity (RFC). A person's RFC is the most that she "can still do despite [her]

§§ 416.909; 416.922. Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 416.922(b).

[3] The four "functional areas" that the SSA uses to determine mental limitations are (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3).

limitations." 20 C.F.R. § 416.945(a)(1). The ALJ found that the Plaintiff had the RFC to perform light work as defined in 20 C.F.R 416.967(b), with certain additional limitations, including that she could stand for only four hours in an eight-hour workday, walk for only four hours in an eight-hour workday, could not climb ropes, kneel, or crawl, could only occasionally climb stairs, could not be exposed to vibrations, and could not operate hazardous machinery. R. 22–23.

The ALJ noted Plaintiff's testimony that she suffered from chronic headaches. R. 24. The ALJ also mentioned that Plaintiff's provider "recorded complaints of considerable headache pain" when compiling a list of Plaintiff's reported impairments. R. 25. But he stated that, generally (and not specifically as to headaches), "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 24. The ALJ explained that "the clinical signs/findings" relating to Plaintiff's complaints were a "tad uneven" and noted that her treatment had been conservative. R. 25. However, the ALJ cited no records in support of these statements, and it is unclear to the Court whether this comment was meant to apply to—and discount—Plaintiff's reported headache symptoms (e.g., sensitivity to light and sound and loss of hearing). *See* R. 25. Specifically, as to headaches, the ALJ noted,

> The evidence also shows a pattern of headache pain complaints, and various neurologists and other "acceptable medical sources" have identified this impairment, too. Pursuant to the guidance in SSR 19-4p[4], as well as SSR 03-2p[5] discussing types of chronic pain syndrome, the Administrative Law Judge recognizes the existence of these severe impairments.

R. 26. There are no other mentions of Plaintiff's headaches in the ALJ's decision. The limitations in Plaintiff's RFC do not include any limitations related to light or sound sensitivity, or to loss of hearing, nor does the ALJ explain why he declined to adopt these limitations, which appear in the record and in Plaintiff's testimony.

At Step Four, the ALJ briefly revisited Plaintiff's reported social deficits, noting that he considered her mental impairments to be non-severe (meaning they did not impact her ability to perform basic work functions), because the claimant was typically oriented, had appropriate thought content, and did not regularly have difficulty with focus or concentration. R. 27. He also noted that, on a phone call with the Social Security Administration about her claim,

---

[4] Social Security Regulation (SSR) 19-4p states that, in assessing a person with headaches' residual functional capacity, the ALJ "must consider and discuss the limiting effects of [the headaches] and any related symptoms." The regulation goes on to state, "For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC."

[5] Social Security Regulation (SSR) 03-2p governs claims involving Reflex Sympathetic Dystrophy Syndrome (RSDS), also frequently known as Complex Regional Pain Syndrome, Type I (CRPS).

Plaintiff was "cooperative and pleasant" and did not appear to have issues understanding and responding to questions. R. 27.

Finally, at Step Five, the ALJ found that, while Plaintiff had no past relevant work, R. 28, she could perform jobs that existed in significant numbers in the national economy, including the jobs of ticket seller and ticket taker, R. 29. Because Plaintiff could perform work that existed in significant numbers in the national economy, the ALJ found Plaintiff was not disabled. R. 30.

Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which denied it. R. 1–7. Plaintiff then timely filed a complaint with this Court seeking reversal of the opinion. Compl. (Doc. 1). Plaintiff claims that the ALJ erred in three ways: (1) by finding that Plaintiff's headaches were a "severe" impairment but then failing to identify functional limitations that resulted from the headaches, or to explain why there were none; (2) by failing to consider the combined effects of Plaintiff's psychiatric impairments and physical impairments on her ability to perform work that required sustained interaction with others; and (3) by finding both that Plaintiff had mild limitations in interacting with others and that Plaintiff could perform a job that required sustained interaction with others, without reconciling these findings. Doc. 21. The Commissioner responded. Doc. 24. Plaintiff did not file a reply. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. Standard of Review

An ALJ must assess a claimant's RFC based on "all of the relevant medical and other evidence," including but not limited to, "descriptions and observations of [a claimant's] limitations . . . including limitations that result from [a claimant's] symptoms, such as pain," as described by the claimant. 20 C.F.R. §§ 416.945(a)(3); 416.920(a)(3); 416.920b. But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). And, in forming the RFC, an ALJ may discredit a claimant's subjective complaints. *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005). However, the ALJ must articulate "explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such

evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for his decision with enough clarity to enable the Court to conduct meaningful review of the standards he employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). In making its decision, the Court must review the entire record. *Id.*; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

## IV. Analysis

a. The ALJ did not sufficiently explain why he found Plaintiff's headaches to be a severe impairment but found Plaintiff had no corresponding limitations.

Plaintiff argues first that the ALJ erred by finding Plaintiff's headaches to be a severe impairment but then neither including corresponding limitations in Plaintiff's RFC nor explaining why they were unnecessary.

To start, the Court does not agree with the assertion that an ALJ must impose a designated limitation in the RFC to accommodate each and every severe impairment. *See* Doc. 21 p. 6 ("Because the ALJ found migraine headaches a severe impairment at step two, he needed to articulate what significant limitations to work activity were caused by this impairment, or state that this impairment was non-severe."). This assertion runs counter to at least one decision issued by the Eleventh Circuit. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (ruling that the ALJ properly considered the claimant's severe impairment of obesity in formulating the claimant's RFC even though the ALJ found that the claimant's obesity did not result in any "specific functional" restrictions). Thus, the ALJ did not commit per se error in omitting limitations associated with Plaintiff's headaches. That said, he was required to articulate "explicit and adequate reasons for doing so." *See Wilson*, 284 F.3d at 1225.

The ALJ states that he "considered all symptoms" when assessing Plaintiff's RFC. R. 23. He explains that Plaintiff's headaches were a severe impairment, as "various neurologists . . . have identified this impairment . . ." R. 26. But he makes no mention of whether or how he considered the related reports that they caused sensitivity to light and sound and hearing loss, *see* R. 18–30, purported limitations referenced in the record. *See,* R. 457, 464–65, 1220, 3751.

To be sure, the ALJ did make a broad finding that "claimant's statements about the intensity, persistence, and limiting effects of her symptoms," as to her impairments, were "not entirely consistent with the medical evidence and other evidence in the record." R. 24. But the ALJ's broad finding that the record was not wholly consistent with Plaintiff's description of her symptoms, without any specific mention of Plaintiff's reported headache symptoms, leaves the Court without a basis to evaluate the grounds on which the ALJ omitted related limitations from Plaintiff's RFC.

It could be that the ALJ did not include these limitations in the RFC because he found Plaintiff's headaches to be sufficiently managed through medication. Alternatively, however, it could be that the ALJ failed to remark or consider the symptoms. Without the ALJ's providing "explicit and adequate reasons" for the absence of corresponding limitations in the RFC, the Court cannot meaningfully review his evaluation of them.

For this reason, I remand to allow the ALJ to identify on what basis he excluded limitations associated with Plaintiff's headache impairment. Should the ALJ find that Plaintiff does not have light and sound sensitivity or hearing loss limitations, the ALJ must state the basis on which he made that conclusion. If he determines Plaintiff requires these limitations during the workday, the ALJ must refashion Plaintiff's RFC to account for the limitations.

b. The ALJ did not err by failing to consider the combined effect of Plaintiff's psychiatric and physical impairments on her ability to perform work that required sustained interaction with others.

Plaintiff next argues that remand is required because the ALJ failed to account for how Plaintiff's "mild" limitation in interaction with others, when combined with her physical impairments and age, would affect her ability to perform work requiring constant hearing and speaking.

In determining a Plaintiff's RFC, an ALJ must "consider all of [a claimant's] medically determinable impairments . . . including [the] medically determinable impairments that are not 'severe.'" 20 C.F.R. § 416.945(a)(2). And, an ALJ must "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923.

In *Jones v. Department of Health and Human Services,* the Eleventh Circuit rejected a claimant's argument that the ALJ failed to consider "the

combined effect of his pain and the side effects of pain medication," 941 F.2d 1529, 1533 (11th Cir. 1991). The Eleventh Circuit found sufficient evidence that the ALJ considered "the combined effect of appellant's impairments," in the ALJ's statement that, although the claimant had "'severe residuals of an injury to the left heel and multiple surgeries on that area,' he does not have 'an impairment *or combination of impairments* listed in, or medically equal to'" a per se disabling condition. *Id.* at 1533.

In *Wilson v. Barnhart*, the Eleventh Circuit reversed a district court's reversal of an ALJ's opinion. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). The district court had found that the combination of the claimant's impairments rendered him disabled and that the ALJ had erred when he "*did not discuss the cumulative effects of Plaintiff's impairments*." *Id.* (emphasis in original). In reversing the district court, the Eleventh Circuit explained, "the ALJ specifically stated that 'the medical evidence establishes that [the claimant] had several injuries which constitute a 'severe impairment,' but that he did not have an impairment *or combination of impairments* listed in, or medically equal to" a per se disabling impairment. *Id.* The Eleventh Circuit concluded that "[t]he ALJ's determination constitute[d] evidence that he considered the combined effects of [the claimant's] impairments." *Id.*

Here, the ALJ's decision demonstrates that he considered the combined effect of the impairments referenced in the opinion. At Step Two, in deciding

whether Plaintiff's impairments were severe, the ALJ examined whether Plaintiff's mental impairments (e.g., anxiety, depression, post-traumatic stress disorder), in combination with each other, impacted any of her "functional areas." R. 21. At Step Three, the ALJ explicitly found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22. And, at Step Four, the ALJ considered Plaintiff's various impairments in combination, explaining that she complained that her pain from her physical impairments resulted in "various limitations" including "issues with socialization and getting along with others." R. 23. And, the ALJ explicitly recognized, immediately after discussing Plaintiff's (lack of) limitations on interacting with others in the RFC, that he was "require[d] . . . to consider both severe and nonsevere impairments in formulating the residual functional capacity" and had, indeed, accounted for "all medically determinable impairments" in formulating the RFC. R. 27.

Thus, the opinion makes clear that the ALJ considered the combined effect of Plaintiff's impairments.

c. The ALJ did not err by failing to account for Plaintiff's mild limitation in interacting with others.

Plaintiff's final argument is that the ALJ erred by finding both that Plaintiff had mild limitations in interacting with others and that Plaintiff

could perform a job that required sustained interaction with others, without reconciling these contradictory findings. Doc. 21.

In deciding whether Plaintiff's impairments were severe, the ALJ examined whether Plaintiff's mental limitations impacted any of her "functional areas."[6] R. 21. In doing so, the ALJ found that Plaintiff had only a "mild limitation" in interacting with others because, even though the Plaintiff alleged deficits in her social functioning, there "were scant references to social deficits on actual mental status examinations." R. 21. Because Plaintiff's limitations caused by her mental disorders were "mild," the ALJ found that Plaintiff's mental impairments were non-severe, meaning that they did not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities. R. 21.

Accordingly, the ALJ did not incorporate any limitations on interacting with others into Plaintiff's RFC. R. 22. In explaining his RFC finding, the ALJ briefly revisited Plaintiff's reported social deficits, noting that he considered her mental impairments to be non-severe (meaning they did not impact her ability to perform basic work functions) because the claimant was typically oriented, had appropriate thought content, and did not regularly have

[6] The four "functional areas" that the SSA uses to determine mental limitations are (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3).

difficulty with focus or concentration. R. 27. He also noted that, on a phone call with the Social Security Administration about her claim, Plaintiff was "cooperative and pleasant" and did not appear to have issues understanding and responding to questions. R. 27.

Ultimately, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of ticket seller and ticket taker, R. 29. The job of ticket seller, Plaintiff points out, requires sustained interaction with the public. Doc. 21 p. 8; *see also* Doc. 21-1.

Plaintiff claims the ALJ erred by failing to reconcile his finding that Plaintiff could perform a job that requires sustained interaction with the public and the contrary finding that Plaintiff had mild limitations in interacting with others. Doc. 21 p. 8. But, the persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC when they find "mild" limitations in Plaintiff's functional areas, nor are they required to expressly explain why the functional area limitations are not included in the RFC. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979–80 (11th Cir. 2016) (finding that the ALJ did not err by failing to include limitations in the RFC related to the plaintiff's non-severe mental impairment when the ALJ found that the plaintiff had only "mild" limitations); *Guerrera v. Kijakazi*, No. 8:22-cv-00740-AEP, 2023 WL 2446626, *5 (M.D. Fla. Mar. 10, 2023) (affirming ALJ's decision where ALJ properly found mild limitations in the functional areas and did not

explain why the mild limitations were not included in the RFC; "ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations in the [functional areas] criteria."); *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) ("ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations while completing [the functional areas assessment]."); *Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *9 (S.D. Fla. May 4, 2022) (finding that the ALJ was not required to include mental RFC limitations despite finding "mild" limitations in the paragraph B criteria), *report and recommendation adopted*, 2022 WL 1605318 (S.D. Fla. May 20, 2022); *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas," but "did not err in failing to include [functional] limitations in the RFC related to [the plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *report and recommendation adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC."), *report and recommendation adopted*, 2021 WL 1138179 (M.D. Fla. Mar. 25, 2021); *Sprague v. Colvin*, No. 8:13-cv-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla.

June 9, 2014) ("[T]he plaintiff's assertion that the 'mild' findings meant he had some mental functional limitation is unpersuasive.").

Here, the ALJ found—and Plaintiff does not dispute—that Plaintiff's mental limitations, including her anxiety, were not severe. The ALJ extensively addressed Plaintiff's mental impairments both when determining whether Plaintiff's impairments were severe, and in assessing her RFC. R. 21–28. The ALJ found that Plaintiff's testimony regarding her difficulty getting along with others was inconsistent with the "scant references to social deficits on actual mental status examinations." R. 21. The ALJ noted that he rejected Plaintiff's alleged limitations in interacting with others because of Plaintiffs' medical examination results and her "cooperative and pleasant" demeanor on a call with the Social Security Administration. R. 27.

In sum, the ALJ relied on substantial evidence in determining that Plaintiff had a mild limitation in her ability to communicate with others. The ALJ expressly found that the limitation did not impact Plaintiff's ability to work. And, the ALJ discussed how he considered Plaintiff's mild mental limitations in formulating Plaintiff's RFC. Plaintiff demonstrates no error in the ALJ's treatment of Plaintiff's mild limitation on interacting with others.

## V. Conclusion

For the reasons stated:

(1) This case is REMANDED to the SSA for further proceedings.

(2) On remand, the ALJ shall identify on what bases he selected (and excluded) the limitations associated with Plaintiff's reported headache symptoms. Should the ALJ find that Plaintiff does not have light and sound exposure or hearing loss limitations, the ALJ must state the basis on which he made that conclusion. If he determines Plaintiff requires these limitations during the workday, the ALJ must refashion Plaintiff's RFC to account for the limitations.

(3) The Clerk of Court shall enter judgment in the Plaintiff's favor, terminate any pending motions, and close the case.

ORDERED on October 13, 2026.

Natalie Hirt Adams

NATALIE HIRT ADAMS
United States Magistrate Judge